IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 04-cv-00244-WDM-BNB

KEVIN HARVEY,

      Plaintiff,

v.

DEPARTMENT OF HUMAN SERVICES, et al.,

      Defendants.

---

## ORDER ON DEFENDANTS' MOTION TO DISMISS

---

Miller, J.

      This matter is before me on Defendants' motion to dismiss, filed October 8, 2004. For the reasons that follow, the motion will be granted in part, and denied in part.

### Background

      Plaintiff Kevin Harvey (Harvey) brings suit asserting three claims under 42 U.S.C. § 1983 and as well as one state law claim, alleging that he was retaliated against for speaking out against his employer's unlawful medication administration policy. As alleged in the complaint, the facts are as follows.

      Harvey worked as a Youth Service Worker for defendant Division of Youth Corrections (DYC), a division of defendant Department of Human Services (DHS), from 1984 through 1994, when he took a job as a corrections officer with the

Department of Corrections.  In 1997, he returned to DYC as a Security Officer II, assigned to defendant Mount View Youth Services Center (Mount View).  Until 1999, Harvey never received any corrective or disciplinary actions from DYC, and his performance was always rated at least satisfactory.

At Mount View, "management" instructed Harvey that one of his duties was to administer medications to juvenile inmates under his supervision.  (Compl., ¶ 17.) Harvey was uncomfortable with this duty because he had not been given adequate training.  Researching the matter, he determined that security officers were authorized by DHS to administer medication only after four hours of training, including a knowledge-based test and practicum.  However, Harvey received no training for the first seven months he was employed as a security officer, and in April 1998 participated in a one-hour training class led by John York, who admitted that the class would not "hold up in court."  (Compl., ¶ 25.)

In the fall of 1998, Harvey began complaining to management at Mount View about the failure to properly train security officers.  Jeanne Vivian (Vivian), his supervisor, told him that his "training was not an issue."  In the spring of 1999, she issued two corrective actions against him based on purported errors in administering medications.  Harvey grieved these corrective actions, including to defendant Penny Brown (Brown), the director of Mount View.  On December 31, 1999, Brown issued a third grievance against Harvey, based on a purported error in recording medication, as well as "improper supervision and teamwork."  (Compl., ¶ 32.)  Other employees

2

were not disciplined for similar errors.

Harvey appealed the corrective actions to the State Personnel Board.  He reached a settlement in December 2001, and as part of the settlement, Mount View was to institute a legal medication administration program.  Mount View never instituted such a program.

On February 10, 2002, Harvey was issued a "half sheet," a type of corrective action, dealing with medication administration errors allegedly committed by employees under Harvey's supervision.  (Compl., ¶¶ 40-41.)  In early June 2002, Harvey was notified that he was being transferred to the Marvin Foote Youth Services Center.

Harvey alleges that Defendants took disciplinary action against him in retaliation for his complaining about Mount View's refusal to properly train its security officers in violation of 42 U.S.C. § 1983.  His complaint asserts four claims: (1) pursuant to a policy or practice, Mount View intentionally violated his First Amendment rights by disciplining him for speaking out about its unlawful medication administration; (2) Brown and Lukens disciplined him in retaliation for speaking out about Mount View's unlawful medication administration, in violation of his First Amendment rights; (3) all the defendants (Defendants) conspired against him to violate his First Amendment rights; and (4) Defendants breached the settlement agreement by failing to institute a legal administration program.  Defendants now move for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

3

<u>Standard of Review</u>

Under Fed. R. Civ. P. 12(b)(1), a motion to dismiss should be granted if the court does not have subject matter jurisdiction over the case. A motion to dismiss for lack of subject matter jurisdiction may constitute either a facial or factual challenge. *United States v. Holt*, 46 F.3d 1000, 1002 (10th Cir. 1995). Where, as here, the motion attacks the sufficiency of the complaint's allegations, it constitutes a facial challenge, and the court must accept the complaint's allegations as true. *Id.*

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) should be granted when it appears beyond doubt that the plaintiff could prove no set of facts entitling him to relief. The court must accept as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to the plaintiff. *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996).

<u>Discussion</u>

Defendants argue that Harvey's first claim against Mount View, and third and fourth claims, to the extent they are asserted against defendants DHS, DYS, and Mount View, must be dismissed as barred by the Eleventh Amendment. Harvey appears to concede this argument.

Entities that are "arms of the state" are entitled to immunity under the Eleventh Amendment for suits in federal court brought pursuant to 42 U.S.C. § 1983. *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 574 (10th Cir. 1996). Additionally, relevant to Harvey's first and third claims, the states (and arms of the states) are not persons for

4

purposes of § 1983. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 64 (1989). *See also Harris v. Champion*, 51 F.3d 901, 905 -906 (10th Cir. 1995) ("[n]either the state, nor a governmental entity that is an arm of the state for Eleventh Amendment purposes . . .is a 'person; within the meaning of § 1983"). Accordingly, Harvey's first and thrid claims should be dismissed against DHS, DYS, and Mount View.

With regard to Harvey's fourth claim, it is well-established that a state and its agencies are immune in federal court from claims asserting breach of contract under state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (stating that there is no "greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law") *Clark v. N. M. Dept. of Corr.*, 58 Fed. Appx. 789, 791, 2003 WL 133458, at *2 (10th Cir. Jan. 17, 2003) (unpublished table decision) ("[t]he Eleventh Amendment provides absolute immunity in federal court to state officials for suits alleging breach of contract under state law"). Harvey concedes that "the breach of contract claim should more appropriately be pled in state court." (Pl.'s Resp., at 2.) Consequently, this claim will be dismissed, without prejudice to Harvey filing suit in state court.

Defendants next argue that Harvey's § 1983 claims must fail against Brown and Lukens (the individual defendants) because he fails to allege any personal participation on their parts, and in any case, they are entitled to qualified immunity. Defendants first correctly note that the complaint makes no relevant allegations

5

against the individual defendants.[1]  *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (internal quotation omitted) ("personal participation is an essential allegation in a § 1983 claim").  However, in his response brief, Harvey alleges that Lukens issued the corrective "half sheet" and that Brown initiated Harvey's transfer away from Mount Vernon.

A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  *See also Hayes v. Whitman*,  264 F.3d 1017, 1025 (10th Cir. 2001) (suggesting it is appropriate for a court to consider additional facts or legal theories asserted in a response brief to a motion to dismiss if consistent with the facts and theories advanced in the complaint). Consequently, Harvey's complaint is not subject to dismissal on these grounds.


The individual defendants also argue that they are entitled to qualified immunity against Harvey's claims.  When a defendant raises the defense of qualified immunity in a motion to dismiss, the court must first determine, under the customary motion to

---

[1]The only allegations concerning the individual defendants are that they were state employees acting within the course and scope of their employment; Brown was the director of Mount View, and Brown issued Harvey a corrective action in December 1999, which was more than two years prior to his filing suit and which is therefore barred by the statute of limitations, *see Riel v. Reed*, 760 F. Supp. 852, 855 (D. Colo. 1991).  (Compl., ¶¶ 3,4,31, & 32.)

dismiss standard,[2] whether the plaintiff has asserted a violation of federal law. *Currier v. Doran*, 242 F.3d 905, 917 (10th Cir. 2001).  If so, then "the plaintiff must demonstrate to the court that the law on which the plaintiff relies was clearly established at the time of the defendants' actions." *Id.* at 923.  *See also Eaton v. Meneley*, 379 F.3d 949, 954 (10th Cir. 2004) ("[u]nder our two-part test for evaluating qualified immunity, the plaintiff must show (1) that the defendant's conduct violated a constitutional or statutory right, and (2) that the law governing the conduct was clearly established at the time of the alleged violation").

Consequently, my threshold inquiry in the qualified immunity analysis is whether, taking Harvey's allegations as true, the individual defendants violated his First Amendment rights.  *See Jones v. Hunt*, 410 F.3d 1221, 1225 (10th Cir. 2005). *See also Eaton,* 379 F. 3d at 955-56 (the central issue is whether the plaintiff's allegations, as construed in the light most favorable to him, would establish a violation of his constitutional rights). In determining whether a plaintiff has stated a First Amendment retaliation claim, I am to employ a four-part test.  *Lybrook v. Members of Farmington Muni. Sch. Bd. of Educ.*, 232 F.3d 1334, 1338 (10th Cir.

---

[2]Defendants cite a variety of cases, such as *Abeyata by and through Martinez v. Chama Valley Ind. Sch. Dist. No. 19,* 77 F.3d 1253, 12 55 (10th Cir. 1996), in which the Tenth Circuit employed a "heightened" pleading standard applicable after the defense of qualified immunity is raised.  However, the Tenth Circuit has since rejected the heightened standard and held that a motion to dismiss raising qualified immunity may only be granted, as with any motion to dismiss, if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Currier*, 242 F.3d at 917 (*citing Conley*, 355 U.S. at 45-46.)

2000).

> First, [I] must determine whether the employee's speech involves a matter of public concern. . . . If that is found to be the case, [I] then balance the employee's interest in commenting upon matters of public concern 'against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. . . . Third, if the balance tips in favor of the employee, the employee must then show that the speech was a substantial factor or a motivating factor in the detrimental employment decision. . . . Fourth, if the plaintiff establishes that speech was such a factor, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech.

*Id.* at 1338-39 (internal quotations omitted).

The parties do not address each of the prongs listed in *Lybrook*. However, Harvey does argue that his speech regarding Mount View's medication policy touched a matter of public concern under *Johnsen v. Ind. Sch. Dist. No. 3*, 891 F.2d 1485, 1490 (10th Cir. 1989) (holding speech regarding school medication policy addressed matter of public concern). Regarding the second prong, neither the allegations in his complaint nor Defendants' motion indicate that his speech burdened Defendants' interest in promoting the efficiency of the public service they provide in a manner sufficient to outweigh his interest commenting on Mount View's policy. Regarding the third prong, Harvey's complaint, supplemented by his response brief, indicates that Harvey never received any corrective actions until he started complaining about the medication policy, that the individual defendants issued him a corrective action and initiated his involuntary transfer, and that his speaking out about the illegal medication

administration occurring at Mount View was a motivating factor in these actions.[3]
(Compl, ¶¶ 40, 43, 55.)  Defendants make no argument regarding the fourth prong.
Under these circumstances, it does not appear beyond doubt that Harvey can prove
no set of facts in support of his claim which would entitle him to relief."

Having found, for purposes of this motion, that Harvey has established a
violation of his First Amendment rights, I then must determine whether "the right
allegedly violated has been 'clearly established in a more particularized, and hence
more relevant sense: The contours of the right must be sufficiently clear that a
reasonable official would understand that what he is doing violates that right.'"
*Denver Justice & Peace Comm., Inc. v. City of Golden*, 405 F.3d 923, 928 (10th Cir.
2005 (*quoting Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

I agree with Harvey that it is clearly established in the Tenth Circuit that a
government employer may not retaliate against an employee for exercising [his]
constitutionally protected right of free speech," including by imposing an adverse
employment action against that employee for speaking out against matters of public
concern, such as an unlawful medication policy.  *See Lybrook*, 232 F.3d at 1338;
*Johnsen*, 891 F.2d at 1490.  *See also Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th

---

[3]This is not to say that I find that these alleged actions were "adverse
employment actions" sufficient to constitute First Amendment violations.  *See
Lybrook*, 232 F.3d at 1340.  Rather, on the pleadings before me, it is not clear that he
could prove no facts demonstrating that these actions were sufficiently adverse to
violated his rights under the First Amendment.

Cir. 2004) ("*Hope* [*v. Pelzer*] thus shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional").  Consequently, I find that Harvey's second claim should not be dismissed against the individual defendants based on qualified immunity at this time.

Defendants also argue that they are entitled to qualified immunity on Harvey's third claim, because he has failed to adequately allege a conspiracy under § 1983. "In order to plead a conspiracy claim, 'a plaintiff must allege, either by direct or circumstantial evidence, a meeting of the minds or agreement among the defendants.'"  *Salehpoor v. Shahinpoor*, 358 F.3d 782, 789 (10th Cir. 2004) (*quoting Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1126 (10th Cir.1994)).  *See also Tonkovich v. Ks. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (to avoid dismissal of a § 1983 conspiracy claim, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants").

Harvey's complaint contains no allegations demonstrating an agreement and concerted action amongst the defendants.  Furthermore, in his response brief, he merely argues that the unalleged facts that Lukens gave Harvey a fourth corrective action, and Brown initiated Harvey's transfer away from Mount View, are sufficient to state a claim of conspiracy.  (Pl.'s Resp., at 2.)  I disagree.  Even if proven, these facts fail to create an inference that the individual defendants conspired, and this claim should be dismissed.  *See Brever*, 40 F.3d at 1127.

10

Accordingly, it is ordered:

1.     Defendants' Motion to Dismiss, filed October 8, 2004 (Docket # 16), is

       granted in part and denied in part.

2.     Plaintiff's First Claim, alleging First Amendment retaliation by defendant

       Mount View Youth Services Center, and Third Claim, alleging conspiracy

       to interfere with Plaintiff's First Amendment rights by all the defendants,

       are dismissed with prejudice.

3.     Plaintiff's Fourth Claim, alleging breach of contract by all the defendants,

       is dismissed without prejudice.

4.     Defendants Department of Human Services, Division of Youth

       Corrections, and Mount View Youth Services Center, are dismissed from

       this case.

5.     This case remains pending on Plaintiff's Third Claim, alleging First

       Amendment retaliation by defendants Brown and Lukens.

6.      Plaintiff is ordered to file an amended complaint, providing allegations

regarding the personal participation of defendants Brown and Lukens

on or before September 29, 2005.  Failure to do so will result in

dismissal of Plaintiff's remaining claim.

DATED at Denver, Colorado, on September 9, 2005.

BY THE COURT:


/s/ Walker D. Miller
United States District Judge